**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bradley L Nelson, | No. CV-21-00455-TUC-JCH |
| Plaintiff, | **ORDER** |
| v. | |
| County of Pima, et al., | |
| Defendant. | |

Before the Court is pro se Plaintiff Bradley L. Nelson's ("Plaintiff") First Amended Complaint ("FAC"). (Doc. 6.) Plaintiff was previously granted leave to proceed in forma pauperis and his Complaint was screened and dismissed without prejudice pursuant to 28 U.S.C. §1915(e)(2). (Doc. 5.) Plaintiff was given leave to file an amended complaint by January 8, 2022, which he did. (Doc. 5). The Court will again screen the FAC pursuant to 28 U.S.C. §1915(e)(2) before it is allowed to be served. For the reasons set forth below, the FAC will be allowed to proceed.

## I.     BACKGROUND

The FAC alleges the following: Plaintiff is an adult male over the age of forty and suffers from "…a history of disability [sic], permanent shoulder damage…, heart disease, permanent heart damage, history of a [sic] physical difficulties in walking, permanent elbow damage…, loss of hearing (wears hearing aids)[,] and permanent loss of enjoyment

of life." (Doc. 6 at 13.)  Plaintiff also receives social security disability benefits. (*Id.* at 9.)

In November 2014, Plaintiff filed a claim against Defendant Pima County ("Pima County") with the Equal Employment Opportunity Commission ("EEOC") and the Civil Rights Division of the Arizona Attorney's General's Office ("Attorney General"). (Doc. 6 at 6.) Plaintiff asserts that no findings were made, yet Pima County "changed their procedures regarding discrimination … after that investigation." (*Id.*) Plaintiff does not provide details regarding the facts underlying the 2014 EEOC charge. After an investigation into the 2014 EEOC charge, Plaintiff asserts that at least one Pima County employee shared that it was too costly to consider Plaintiff for employment at Pima County because he was engaged in EEOC litigation.  (Doc. 6 at 6.)

In 2019 and 2020, he applied for two open positions—specifically as an ITD "Information Technology Home" Business Systems Analyst and a Property Appraiser/Trainee—with Pima County. (Doc. 6 at 4, Doc. 6 Ex. A, B.) Plaintiff unsuccessfully applied three times for the Property Appraiser/Trainee position despite being "qualified at all times." (Doc. 6 at 3.) Plaintiff applied for the Business Systems Analyst position and was not hired despite his relevant skills "setting up businesses, data systems, [search engine optimization] and [search engine marketing] to meet the needs of a community or organization" and his previous experience. (Doc. 6 at 3-5.) Separately, Plaintiff sent materials "showing his qualifications for the prospective jobs" to Pima County Board Supervisor Richard Elias as Plaintiff had previously experienced problems with Pima County employees including Deborah Roe, Rosemary Smith, Vera Wesetermann, and Jim Mize. (Doc. 6 at 3, 5.) At some unspecified time, Plaintiff was granted an interview for a Pima County Position. (Doc. 6 at 9.) During his interview, Plaintiff wore a neck brace and "explained [his] disabilities[.]" (Doc. 6 at 9.)  At another unspecified time, Plaintiff applied for a clerical position at Pima County but he was not hired or offered an interview despite demonstrating a baseline qualification by passing a "clerical test." (Doc. 6 at 7.)

Plaintiff alleges Pima County hiring authorities subjected him to differential

treatment during his application process. (Doc. 6 at 7). In addition to characterizing Plaintiff as litigious, Pima County allegedly misrepresented their attempts to contact the Plaintiff regarding available positions, mishandled his application by claiming they did not have Plaintiff's driver's license on file then backtracked when it was discovered, and conducted an "unlawful" search into his personal background which impermissibly spanned into his high school history. (Doc. 6 at 5, 7.) Plaintiff does not allege what information, if any, was discovered or used against him, or how the search was unlawful.

Pima County did not hire Plaintiff for any position. (Doc. 6 at 6.)[1] Plaintiff characterizes Pima County's conduct during his application process, and their decision to not hire him, as discrimination based on Plaintiff's age and disability and as retaliation based on his 2014 EEOC complaint. Plaintiff alleges that "[s]imilarly situated younger persons were hired" instead of him. (Doc. 1 at 5.) Specifically, Plaintiff indicates that he saw "at least 50" new hires at the Pima County One Stop location, all "clearly under the age of forty," and some revealed they had applied through the clerical testing process that Plaintiff had used. (Doc. 6 at 7.) Plaintiff also asserts, "…Pima County provided reasonable accommodations to other similarly situated employees/salespersons while denying Mr. Nelson an accommodation." (Doc. 5 at 5, 7.)

In November 2020, Plaintiff filed a claim with the EEOC and Attorney's General's Office. (Doc. 6 at 13; Doc. 6 at Ex. C.) On August 6, 2021, Plaintiff was issued a right-to-sue letter under Charge No. 35A-2021-00056C. (Doc. 6 at Ex. C.) Although Plaintiff attached the right-to-sue letter to his FAC, he did not provide details on his underlying charge submitted to the EEOC or Attorney General. (Doc. 6 at Ex. C.)

In Count I, Plaintiff alleges violations of the Americans with Disabilities Act ("ADA"). In Count II, Plaintiff alleges a claim of age discrimination based on the Age Discrimination in Employment Act. In Count III, Plaintiff alleges retaliation under Title VII of the ADA. Plaintiff requests damages and injunctive relief. (Doc. 6 at 16-17.)

---

[1] From 2012 to 2021, Plaintiff claims that he unsuccessfully applied approximately fifty times for various positions including entry level positions at Pima County (Doc. 6 at 3). The crux of his FAC centers on his applications during 2019 and 2020.

I.    ***In Forma Pauperis* Screening**

    **A. Standard of Review**

        The Court has a statutory obligation to screen a *pro se*, *in forma pauperis* complaint before ordering it served. 28 U.S.C. § 1915(e)(2). "[S]ection 1915(e) not only permits but requires a district court to dismiss an in forma pauperis complaint that fails to state a claim." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). A district court must screen and dismiss actions filed by a plaintiff *in forma pauperis* if the action is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from relief." 28 U.S.C. § 1915(e)(2)(B); *see also Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001).

        Screening orders apply the same standard applied to a Federal Civil Rule 12(b)(6) motion to dismiss. *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). A complaint under Rule 12(b)(6) must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A formulaic recitation of a cause of action with conclusory allegations is insufficient; a plaintiff must plead facts pertaining to his own case making a violation "plausible," not just "possible." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id*.

II.   **Analysis**

    **A. Exhaustion of Administrative Remedies**

        A private or state employee who believes he has been discriminated must file a complaint with the EEOC within 180 days of the alleged discrimination. 29 U.S.C. § 626(d) (2000). The party must file an action within 90 days of receiving a right-to-sue letter from the EEOC. *See* 42 U.S.C. § 2000e–5(f)(l  (Title VII); 42 U.S.C. § 12117(ADA); 29 U.S.C. § 626(e) (ADEA); *O'Donnell v. Vencor Inc.*, 466 F.3d 1104, 1111 (9th Cir.2006) (per

curiam) (finding Title VII and ADEA claims were untimely because complaint was filed more than 90 days after EEOC's issuance of right-to-sue letter).

Plaintiff filed his initial Complaint on November 5, 2021, within 90 days after receiving his right-to-sue letter issued on August 6, 2021. (Doc. 6 at Ex C.)  The Court will presume the scope of the claims alleged in his FAC track the claims made in his charge to the EEOC and Attorney General for purposes of administrative exhaustion.  *See Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003) (explaining that only claims "like or reasonably related to allegations" raised in EEOC charge and investigation are within the district court's jurisdiction) (citation and internal quotation marks omitted).

## B.  Count I: ADA Claim

To state a claim for disability discrimination under the ADA, a plaintiff must plausibly allege that he: (1) is a disabled person within the meaning of the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job; and (3) suffered an adverse employment action because of his disability. *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 271 (9th Cir. 1996); *see* 42 U.S.C. § 12112.

Plaintiff alleges specific facts to support that he is disabled within the meaning of the ADA. According to Plaintiff, Pima County was aware of his disabilities based on his explanation to them, his previous interactions with Pima County hiring authorities, and his 2014 EEOC charge and investigation. Plaintiff alleges facts to support his qualifications, with or without reasonable accommodations, to perform the essential functions of the Pima County positions for which he applied. Plaintiff further alleges that Pima County failed to provide a reasonable accommodation, to include a "hearing devi[c]e for call center work and…accommodations for standing or sitting extended periods of time" and that Pima County did not hire him based on his disability. (Doc. 6 at 13.) Plaintiff has stated a plausible disability discrimination claim.

## C.  Count II: ADEA Claim

The ADEA prohibits an employer from failing to hire, discharging, or otherwise discriminating on the basis of age against an individual who is at least 40 years of age. 29

U.S.C. § 623(a)(1). Under the failure to hire standard, "[a] plaintiff makes out a prima facie case of intentional discrimination under the ADEA if he demonstrates [1] that he was within the protected class of individuals between forty and seventy years of age, [2] that he applied for a position for which he was qualified, and [3] that a younger person with similar qualifications received the position." *Cotton v. City of Alameda*, 812 F.2d 1245, 1248 (9th Cir. 1987) (emphasis added).

Plaintiff alleges a plausible claim for age discrimination. Plaintiff alleges that he is at least 40 years of age and was not selected for a clerical position, for which he was vetted through Pima County's clerical testing process. Plaintiff alleges that younger, equally qualified individuals were hired, after completing the same clerical testing process. While the factual allegations in the FAC related to Count II are sparse, the Court concludes that they are minimally sufficient to make a violation of the ADEA plausible.

### D. Count III: Title VII Retaliation

To state a claim of retaliation under Title VII, Plaintiff must put forth evidence sufficient to show that (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there was a causal link between his activity and the employment decision. *See Hashimoto v. Dalton*, 118 F.3d 671, 679 (9th Cir.1997). Protected activity includes the filing of a charge or a complaint, or providing testimony regarding an employer's alleged unlawful practices, as well as engaging in other activity intended to "oppose[ ]" an employer's discriminatory practices. 42 U.S.C. § 2000e–3(a).

Plaintiff alleges Rosemary Smith "actively engaged in a pattern of acts to solicit other community leaders to … deprive the Plaintiff [of] the opportunity of employment… by claiming and propagating the notion [that] Plaintiff was engaged in EEOC litigation which was too costly to consider Plaintiff for employment." (Doc. 6 at 6.) Because of his involvement in a discrimination EEOC charge against Pima County in 2014, Plaintiff alleges that he was blacklisted, and Pima County's failure to hire him amounts to retaliation under Title VII. Count III will be allowed to proceed.

**III.    Order**

**IT IS ORDERED**:

1.    Defendant Pima County must answer the First Amended Complaint (Doc. 6.) or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

2.    The Clerk of Court must send Plaintiff a service packet including the First Amended Complaint, this Order, and both summons and request for waiver forms for Defendant Pima County.

3.    Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

4.    If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

5.    The United States Marshal must retain the Summons, a copy of the First Amended Complaint, and a copy of this Order for future use.

6.    The United States Marshal must notify Defendant Pima County of the commencement of this action as soon as practicable and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendant must include a copy of this Order. **The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by Defendant within 15 days from the date the request for waiver was sent by the Marshal, the Marshal must:**

   A.    personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) and (h)(1) of the Federal Rules of

Civil Procedure, as appropriate; and

B.  within 10 days after personal service is made, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, First Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

Dated this 12th day of January, 2022.


_____
Honorable John C. Hinderaker
United States District Judge